IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELE A. LEAHY | : |
| Plaintiff, | : |
| | : Civil Action No. 2:17-cv-00968-GJP |
| v. | : |
| GARCES RESTAURANT GROUP LLC, 2401 Walnut Café LLC /dba/ 24 Wood-Fired Fare, 2401 Walnut, LP, and Bedrock Group, LLC. | : |
| Defendants. | : |

**RESPONSE OF DEFENDANTS 2401 WALNUT CAFE LLC, dba 24 WOOD-FIRED FARE, 2401 WALNUT LP and BEDROCK GROUP, LLC TO PLAINTIFF'S <u>APPLICATION FOR ATTORNEY'S FEES</u>**

## I.   INTRODUCTION

This is a public accommodation case alleging a lack of disabled access in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*. The building, located at 2401 Walnut Street, was built in the 1920's as a storage depot for the B&O railroad and it is situated on the Walnut Street Bridge. The restaurant "24" is operated by defendant Garces Restaurant Group ("Garces"), and is located on the third floor of the building, on the Walnut Street incline. As the building owner, 2401 recognizes that the remediation efforts at the building are its responsibility and not Garces', and the consent decree reflect that.

Prior to this dispute arising, there had existed an ADA-compliant entrance to the building at 24th and Sansom Streets, the building's ground floor, which serves as the building's main entrance. 2401 Walnut is a commercial office building with tenants including the GSA and the University of Pennsylvania. This entrance has existed since at least the 1980's. Elevators on the first floor of the building take tenants and visitors to all floors of the building, including to the 3rd

floor level, on which 24 restaurant occupies space that fronts the Walnut Street bridge on the south side. The 24th Street entrance is adjacent to the building's parking lot and currently serves as the building and restaurant's ADA entrance for anyone entering the building via the parking lot and pedestrians on 24th Street. *See Declaration of Charles Block* ("Block Declaration") at ¶3.

This action arises out of a lack of disabled access on the Walnut Street bridge side of the building. As plaintiff and her counsel previously were made aware, the Pennsylvania Department of Transportation ("PennDOT') rejected defendants' initial request to install a ramp on Walnut Street. That location on the Walnut Street Bridge contains "No Stopping at Any Time Signs" and is an area of vehicular traffic leaving Center City at speeds of up to 40 miles per hour or more. *Block Declaration* at ¶4.

In October, 2016, five weeks prior to the restaurant opening, Jamie Ray-Leonetti, a senior staff attorney for DRP, along with Dynah Haubert, the junior attorney, had contacted Garces about possible accessibility issues, and they were directed to Charles Block. Block spoke with them and explained how an ADA ramp had been designed but that PennDOT had rejected the proposed ramp. On October 7, 2016, Block sent an email further explaining how PennDOT had rejected the ramp and attached the rejection letter dated March 27, 2015 (*See* Exhibit A). He also explained that 2401 Walnut Street had been built in the 1920's and that the 24th Street ramp had served as the ADA entrance for decades. *Block Declaration* at¶6.

On October 19, 2016, Block sent Jamie-Ray Leonetti an email to arrange a walk-through of the building (*See* Exhibit B). Prior to this, which was prior to the restaurant opening, DRP had given 2401 suggestions on ADA modifications with which 2401 did its best to comply. This included signage and other items. *Block Declaration* at ¶7.

Aside from the Walnut Street ramp, the approval for which 2401 had no control, 2401 had endeavored to do everything DRP had asked. Requiring 2401 to install a ramp for which it had been denied approvals and had no control was an unfair basis for filing a lawsuit.

Thinking outside of the box, 2401's architect came up with the idea of reducing the size of the ramp and making it "removable." That led to an unexpected but welcome approval for the ramp. *Block Declaration* at ¶8.

After PennDOT subsequently approved the design of the Walnut Street ramp, the parties entered into a Consent Decree which the Court approved on October 25, 2017. As the parties could not agree on the amount of the fees, the Consent Decree provided that the Court would adjudicate that issue.

Disability Rights Pennsylvania ("DRP") has now filed a petition for attorney's fees and seeks an award of over $55,000 in attorney's fees for its actions in filing what can be deemed an unnecessary complaint, propounding unnecessary discovery and unnecessarily prolonging settlement discussions.[1] Moreover, when this lawsuit was filed, Block had already met with es Shannon Levin, Esquire and Dynah Haubert, Esquire and discussed with them 2401's plan to install a handicapped accessible ramp at the Walnut Street entrance.

In 2014, well prior to that time, Defendant had contracted with an engineering firm that had substantial experience dealing with PennDOT and with work on major bridges (such as the Ben Franklin and Walt Whitman bridges), and had paid the firm thousands of dollars for engineering plans for a handicapped accessible ramp.[2] *Block Declaration* at ¶15.

---

[1] According to its website, Disability Rights Pennsylvania ("DRP") is a statewide, non-profit corporation designated as the federally-mandated organization to advance and protect the civil rights of adults and children with disabilities. It receives substantial state and federal funding as well as charitable contributions.

[2] Defendant 2401 paid a global engineering firm, Louis Berger (formerly Ammann & Whitney) to engineer the ramp and entry from the Walnut Street bridge to the restaurant. In this Ammann & Whitney proposal, Appendix I – Scope of Work: "6. Modification of the existing parapets to remain adjacent to the new ramp to meet ADA and

Unfortunately, PennDOT denied 2401's application for a permit to build the ramp. Mr. Block shared with Leahy's attorneys PennDOT's denial letter. *See* Exhibit "C"; see Exhibit C at pg., 2 (Section 2, highlighted). Not long thereafter, Leahy and her lawyers filed a lawsuit against Defendants claiming that they had discriminated against her by "creating a brand new entrance to 24 (restaurant) that is inaccessible…"

At all times relevant to this litigation, however, defendants were agreeable to providing ADA-compliant access on the Walnut Street side of the restaurant, already had spent thousands of dollars to do so and had communicated with DRP counsel their interest in building the ramp and the issues raised by PennDOT. At all times relevant, defendants kept Leahy and her counsel informed that absent approval from PennDOT, defendants were unable to provide a Walnut Street accessible ramp.

Although Leahy and her counsel had presented numerous other items they wanted addressed after their initial discussions with Defendant, including numerous items not included in the complaint, the primary issue was the ramp that PennDOT had denied. In light of the PennDOT denial for building the Walnut Street ramp, 2401 would, by necessity, rely on the main building entrance, the ADA-accessible ramp at 24th and Sansom Streets, to serve as the restaurant's accessible entrance. This was indicated this on the restaurant's web site. Moreover, this 24th Street ramp had been the building's ADA entrance since at least 1994. *Block Declaration* at ¶12.

Ignoring the fact that Defendant was prohibited by PennDOT from constructing the Walnut Street ramp, Leahy's counsel proceeded to file the lawsuit against 2401 and the other defendants. Several of the issues raised by Leahy in her complaint, such as the ADA parking lot

---

minimum height requirements." The ramp plan was incorporated into the plan created and submitted to PennDOT by Ammann & Whitney. *See* Block Declaration at ¶15.

spaces adjacent to the building which were asserted in the complaint, were not discussed with defendants prior to the complaint being filed. Defendant used best efforts to address every issue raised by DRP in an effort to avoid litigation, but to no avail.

DRP, on the other hand, did not use best efforts to try to avoid litigation and blindsided Defendant with the filing of the complaint. As an advocacy group receiving public funding, one might assume that it possessed an ability and inclination to assist Defendant with the approval of the Walnut Street ramp and to avoid costly litigation, if possible. Moreover, the 24th Street ramp already was ADA-compliant and was identified on the 2401 website and was available to anyone interested in handicapped access.[3]

Again, Defendant, from the beginning, has been willing to do whatever it could feasibly and reasonably do, to correct any accessibility issues.

Even after the lawsuit was filed, defendants continued to communicate with DRP lawyers its interest in resolving the matter once the Walnut Street ramp could be completed. 2401's Answer expressed repeatedly its agreement to building a ramp if PennDOT approval could be obtained. *See* 2401's Answer, ¶¶ 32 & 37. Shortly after filing its Answer on May 25, 2017, the parties submitted a Rule 26(f) report that suggested the parties could attend an ADR session "immediately". During the June 16, 2017 telephonic Rule 16 conference, the undersigned advised the Court that settlement seemed likely although there might be an issue as to attorney's fees and that defendants would welcome a referral to Magistrate Judge Hey on that issue. *See* Docket Entries attached hereto as Exhibit "D." Thereafter the parties exchanged a series of comments on the proposed consent decree. *See* Emails attached hereto as Exhibit "E."

---

[3] As noted in defendant 2401's Answer, "since the building is located on the Walnut Street Bridge, which is sloped and without any flat areas, since there is a "No Stopping Any Time" zone in front of the building on the Walnut Street side and since Walnut Street is one of the city's busiest thoroughfares and with speed of automobiles travelling at speeds in excess of 40 miles per hour during rush hour, it is considerably safer for all restaurant patrons to use the 24th Street building entrance." *Answer*, ¶66.

Despite it being apparent that the matter would resolve as the Walnut Street ramp had been approved by PennDOT, after defendant reduced the size of the ramp and made it "removable," and that fact being communicated to Leahy's counsel and to the Court, Leahy's counsel drafted and served lengthy discovery requests, which were completely unnecessary and which Judge Hey held in abeyance because the parties were trying to resolve the matter. The docket entries reflect that Judge Hey was required to conduct numerous conferences or telephonic conferences (June 29, July 7, July 11, July 31, Aug. 23 Sept. 28) to address Leahy's discovery requests and language in the proposed Consent Decree that made no sense or that Defendants had indicated they could not agree to as it was untrue or not feasible.

Two of the conferences with Judge Hey involved Leahy's request for changes to the existing handicapped parking areas at the rear of the building. The parties exchanged several emails on the subject in which Leahy's counsel asked 2401 to remove existing bollards along 24th Street at the front of the parking lot which would have created a security problem, the removal of bike-share spaces that had been issued permits by the City of Philadelphia and additional signage for the handicapped parking lot that only would be viewable by people who had already driven into the lot and seen the reserved spaces.[4] Leahy's counsel also insisted through numerous email exchanges and telephone conferences that 2401 would have to agree to a full "representation and warranty" that the premises were in full compliance with the ADA even though 2401 had agreed only to the changes proposed by Leahy and could not issue a compliance representation and warranty given the historic nature and general condition of the property *Block Declaration* at ¶¶26 & 27.

---

[4] When DPR counsel was advised that the bollards were part of a GSA-mandated security requirement for the law enforcement tenant, she asked if counsel could call the tenant and "see if they minded if we removed some of the bollards." *Block Declaration* at ¶24. The issue with the bollards arose because DPR counsel wanted to be able to access the sidewalk directly from all five ADA parking spaces. Currently, bollards, and a steel chain, and a curb separate the parking lot from the sidewalk on 24th Street. *Id*. at ¶¶22 & 23.

As we set forth below, much of the time expended in this matter by DRP counsel was completely excessive and unnecessary, and the Court should significantly reduce the amount of fees awarded to DRP.

## II. ARGUMENT

A prevailing party on FMLA, ADA, and PHRA claims is entitled to reasonable attorneys' fees and costs. *See* 29 U.S.C. § 2617(a)(3); 42 U.S.C. § 12205; 43 P.S. § 962(c.2). The party must show that its fees are reasonable by submitting evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). An adverse party may oppose the fee petition by specifically challenging the reasonableness of the requested fee. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The district court has a "great deal of discretion to adjust the fee award in light of those objections." *Id.*

Reasonable attorney fees are determined first by calculating the "lodestar," or the number of hours reasonably expended multiplied by a reasonable hourly rate. *See Hensley*, 461 U.S. at 433. "Excessive, redundant, or otherwise unnecessary" hours are not reasonable and must be excluded from the lodestar calculation. *Id.* at 434. The reasonableness of the hourly rate requested must be based on "prevailing market rates in the relevant community," as well as "the experience and skill of the prevailing party's attorneys." *Rode*, 892 F.2d at 1183.

Here, the parties have agreed that the hourly rates utilized by DRP counsel are reasonable and thus that issue is not in dispute. On the other hand, defendants believe that the amount of time expended by DRP counsel was grossly excessive to what was necessary.

DRP seeks an award of $54,383 reimbursement for a total of 217 hours spent in the matter by five lawyers, and costs. In contrast, the total amount of fees charged in this matter by the undersigned, a Martindale AV-rated partner in a Philadelphia law firm, is $10,470.

The $54,383 total fee includes fees of Shannon Levin. In an email to Judge Hey on September 26, 2017 (attached hereto as Exhibit "F"), Shannon Levin, a senior attorney at DRP states: "In an effort to control fees, I have been standing mostly on the sidelines…" At the time of this email, Ms. Levin had billed over $11,000 on the matter, which represented an amount in excess of the entire legal fees charged by undersigned counsel.

As set out above, the filing of the lawsuit itself was unnecessary as it was always in the best economic interest of 2401 to get a Walnut Street accessible ramp approved and installed. Families and locals constitute a large percentage of the restaurant's business and having an accessible ramp is something that would facilitate restaurant business and improve the dining experience. *Block Declaration* at ¶16.

Prior to the lawsuit, 2401 already had used reasonable efforts to get the ramp built. It had hired and paid a large, national engineering firm, designed a ramp, priced construction of a ramp, and had submitted plans for PennDOT approval. *Block Declaration* at ¶15. Were it not for the PennDOT rejection, the ramp would have been built prior to the restaurant opening and there would not have been an issue. Instead of blindsiding 24 with the lawsuit, DRP instead could have assisted 2401 in trying to obtain PennDOT approval. Since 2401 was amenable to any required ADA modifications that were feasible, the lawsuit did nothing but waste the court's time and precipitate legal expenses.

It is worth noting that while DRP seeks over $50,000 in fees, not much of real substance occurred in the matter after the Complaint was filed and answered. No motions were filed. No depositions were taken in the case. Defendants did not serve any discovery on Leahy because none was necessary and defendants had always communicated their interest in resolving the matter. On the other hand, Leahy served a number of lengthy and burdensome discovery

requests, most of which related to matters not in dispute. When Leahy refused to agree to postpone the response date, defendants were forced to seek the intervention of Judge Hey, who stated the discovery need not be answered while the parties discussed settlement.[5]

In its petition for attorney's fees, and particularly in the Declaration of Dynah Haubert, DRP counsel makes a number of flatly incorrect or misleading statements. For example, they contend that "defendants' counsel did not provide them with their clients' [litigation] position" but in the very next statement assert: "Plaintiff's counsel invested substantial time and effort by discussing the potential modifications [sic] with Defendants' counsel extensively" *Haubert Declaration* at 3. The Court could well wonder what was being discussed by DRP with defense counsel if they were not disclosing their litigation position and what required her "substantial time and effort" in relation to those discussions. She then goes on to say "Based on those discussions, on May 11, 2017, Plaintiff's counsel sent to Defendants' counsel a detailed Consent Decree that would resolve the matter with no further litigation expense. Defendants' counsel did not respond to the proposals." *Id.*

DRP counsel continues to misstate the facts later on page 3[6], when she states that "although the Defendants never responded to Plaintiff's settlement proposals or otherwise indicated they were amenable to a resolution on the merits, during a June 29, 2017 teleconference before Judge Hey, counsel for the 2401 Defendants represented there were no issues in dispute other than plaintiff's attorney's fees."[7]

---

[5] On information and belief, and as is normally the practice, most of the in-person and telephonic conferences with Judge Hey were not conducted on the record nor was the telephonic Rule 16 conference with the Court. The undersigned relies on his recollection as to what took place during those conferences and believes that recollection would be substantiated by any notes taken by Court personnel.

[6] DRP counsel also misstates that "Defendants refused to agree to make the changes required to comply with federal law necessitating enforcement of the ADA through institution of the instant lawsuit." *See* ¶6 at pg., 2. This is simply not true as evidenced by the exhibits attached to this response.

[7] The undersigned entered his appearance on May 18, 2017 when prior counsel withdrew and has no first-hand knowledge of what was or was nor discussed with DRP by prior counsel.

As set out above, 2401 always was willing to provide the Walnut Street ramp once PennDOT approved it. In April 2017, prior counsel for 2401, Julie Kinkopf, Esquire, exchanged several emails and shared with Ms. Haubert the plan drawings for the proposed ramp and asked Ms. Haubert to let her know "if the proposed ramp is acceptable and resolves the issues you have relating to the patio." Ms. Haubert had questions about the proposed ramp to which Ms. Kinkopf responded. *See* Exhibit E.

On April 20, 2017, Ms. Kinkopf provided detailed responses to Ms. Haubert which supplemented the drawings and other information already provided to her regarding the slope of the ramp, the handrails and surface coatings and provides further drawings regarding signage requested by plaintiff. *See* Exhibit E. Ms. Kinkopf sent an additional email to Ms. Haubert on May 3, 2017, advising her that final PennDOT approval of the ramp was expected and that "please let me know asap if the proposed changes are acceptable so that we can move forward with the construction." Ms. Kinkopf followed up with another email on May 4, 2017 stating: "Dynah: In light of the timeline the court has placed on the case, please provide your response to the below email ASAP."

Contrary to the assertions of DRP and Ms. Haubert, the record unequivocally shows that 2401 was always interested in resolving the matter as expeditiously as possible and the huge amount of attorney time spent by DRP contributed almost nothing of value to Leahy or advanced the resolution of the matter.

2401 proposes where in the billing worksheet submitted by DRP, the Court should reduce the amount of fees sought to no more than an amount of $10,000.00 in attorney's fees and costs

of $1,245.00. To award DRP the full amount of the fees it has requested would be unjust and inequitable and award it for its aggressive and counterproductive litigation tactics.[8]

### III. CONCLUSION

For these reasons defendant 2401 requests that the Court should deny Plaintiff's Petition for Attorney's Fees and instead award it no more than $10,000.00 in fees and and costs of $1,245.00.

Respectfully submitted,

_____/s/_____
DAVID F. McCOMB
dfmccomb@zarwin.com
Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C.
Pa. Bar No. 35754
1818 Market Street, 13th Floor
Philadelphia, PA 19103
Tel. 215-5569-2800
Fax. 2150569-1606

*Attorneys for Defendants, 2401 Walnut Cafe LLC, dba 24 Wood-Fired Fare, 401 Walnut LP and Bedrock Group, Inc.*

---

[8] Attached as Exhibit G is an analysis of the billing statements provided by Plaintiff's attorneys. It is clear that the fees requested by the attorneys are absurdly excessive. By way of example, Plaintiff's attorneys spent 64.8 hours on work related to the Complaint. This is for a firm that specializes in these types of actions and for a matter that was not complicated. Further, Plaintiff's attorneys spent 103 hours on discovery related work when the parties were working towards a resolution and discovery was not required, defendants never responded to the requests and Judge Hey agreed with defendants that discovery was unnecessary.